## B. M. HATCHER v. CHAS. ROYSTER et al.

1. CHANCERY PLEADINGS AND PRACTICE. *Administrator. Insolvent estates. Overpaid creditors.* Where an administrator, under the belief that the estate is solvent, pays a number of the creditors in full, taking from each of them an obligation to refund the excess over the *pro rata* of his claim, and to hold the administrator harmless for making the payment, if the estate proves eventually to be insolvent, and is about to be wound up as such, the administrator may file a bill in the county of the administration against all of the overpaid creditors, some of whom reside or are found in that county, for an account to ascertain the *pro rata* of their claims, and to recover the excess over such *pro rata*.

2. SAME. *Same. Devastavit.* And the chancellor in the insolvent suit having properly charged the administrator with the sum of his payments in full to creditors with interest, upon the ground of a *devastavit*, the administrator is entitled to recover from such creditors the excess of payments over the *pro rata* of their claims with interest.

3. SAME. *Order of consolidation. Appeal.* An order consolidating such a suit with the suit for the administration of the estate as insolvent, leaves each case to turn upon its own pleadings and proof, the proof and accounts taken subsequent to such order being proof and accounts in both causes, unless the record show the contrary upon proper exception and rulings, and an appeal in one case will not bring up the other. A remand for separate proceedings would be a mere technicality, the parties having already had the benefit of such proceedings.

## FROM MARSHALL.

Appeal from the Chancery Court at Lewisburg. W. S. FLEMING. Ch.

C. ARMSTRONG, W. J. LEONARD and W. N. COWDEN for complainants.

E. COOPER, LEWIS BROS., T. M. JONES and JOHN H. HENDERSON for defendants.

COOPER, J., delivered the opinion of the court.

A. J. Wood died intestate in Marshall county, Tenn., in 1865, and in November of that year the complainant, B. M. Hatcher, and Wm. Jordan were appointed, and qualified as administrators of his estate, giving bond with security in the penalty of one hundred thousand dollars for the faithful performance of their duties. Within the six months after their appointment they received over four thousand dollars of the money of the estate, and believing then that the estate was solvent, they paid the claims of ten creditors of the deceased in full, taking from each an obligation to repay the excess over their *pro rata* if

Hatcher v. Royster.

the estate should prove insolvent, and to indemnify the administrators from any loss by reason of the payment. One of the administrators, Wm. Jordan, died in 1867, and complainant, Hatcher, continued to act as sole administrator. He got into litigation over the supposed assets of the estate, and suggested to the county court the insolvency of the estate. One of the most important suits, involving the assets of the estate to the amount of several thousand dollars, was not finally determined until 1880, and then against the complainant as administrator. In the meantime, on January 28, 1878, W. D. Patton and some of the other creditors, who had filed claims against the estate in the county court, filed a bill against Hatcher, as administrator, and the sureties on his administration bond, charging him with a *devastavit* of the assets, calling for an account of the administration, and to this end asking for a transfer of the administration from the county to the chancery court, and for general relief. Such proceedings were had in this cause, that all the creditors who had filed their claims in time came in, and had the amount of their several claims ascertained; an account was taken with the administrator, who was charged with all assets received, including the disbursements made within the first six months of administration, the court holding the administrator liable therefor upon the ground that the payment was a *devastavit*. The chancellor gave a decree in favor of the complainants in the suit, for the benefit of all the creditors, against the administrator and his sureties for the net balance found due from

him after deducting his compensation and the costs and expenses of administration, and directed the proceeds to be paid out pro rata on the claims allowed. This decree remains in full force and unappealed from.

On May 8, 1878, B. M. Hatcher, as administrator, filed the bill now before us against the ten creditors, or their representatives, whose claims had been paid in full within the first six months of the administration. The bill was filed in Marshall county, in which county some of these creditors resided, and were served with process. John S. Claybrooke, one of these defendants, resided in Williamson county, and Leland Jordan, another defendant, resided in Rutherford county, these facts being stated in the bill, and counterpart writs of summons were sent to those counties, and served upon these parties respectively. The object of the bill was to have an account of the assets and debts of the intestate's estate, with a view to ascertain the extent of the insolvency, and to hold the defendants liable on their obligations for the excess of payments made on their claims over and above their pro rata. Claybrooke and Jordan demurred to the bill, but their demurrer was overruled, and they filed answers. On May 13, 1880, the chancellor ordered this case and the suit of the creditors against the administrator and his sureties to be consolidated and heard together. After this order, decrees for taking the necessary accounts in both causes were rendered, the accounts were taken, and a final decree rendered. In this cause, upon the accounts thus taken, the chancellor rendered decrees in favor of the complainant

15—VOL. 14.

against each of the defendants for the excess of payment over the *pro rata* of the respective claims. Claybrooke and Jordan alone appealed. The Referees have reported in favor of affirming the chancellor's decree, and the appellants have excepted.

It is now insisted that the chancellor erred in overruling the demurrer to the bill put in by the two appellants. One cause of demurrer assigned is that the bill shows on its face that the demurrants were, at the time of its filing, non-residents of, and not found in, Marshall county. Perhaps, if the demurrants were the sole defendants to the bill, the cause assigned would be good. But there are a number of defendants to the bill, and the jurisdiction of the court is *in personam*, and suit may be instituted wherever any material defendant is found, counterpart writs being issuable as of course to other counties for other defendants: Code, secs. 4305, 4306. The demurrer upon this ground alone is therefore clearly bad. But, it is insisted, that the cause of action is against each defendant on a separate obligation, and therefore no other defendant can be a material defendant to the action. This argument rests upon the assumption that the obligation is one which may be sued upon at law against each obligor separately, and that the equity of the bill is vested solely on the legal cause of action thus created. But the assumption is not warranted by the facts.

Each of these obligations commences with a recital of the receipt from the administrators of Wood of the amount, specifying it, of the principal and interest

of the obligor's claim against the estate, and proceeds thus: "Now I bind myself, my heirs, executors and administrators, that if the estate of said Wood, deceased, should prove insolvent, and not able to pay the full amount of its indebtedness, that we will, when called on, pay and refund back to said administrators the amount that may be necessary to reduce the same so as to make it equal to a *pro rata* distribution, and that I will hold said Wm. Jordan and B. M. Hatcher harmless for paying the same over to me." Now, it is obvious that this is not such an obligation as can be sued on at law at all, unless indeed there had been a previous ascertainment of the *pro rata* of the claim in a suit to which the obligor was a party, and by a court having jurisdiction of the subject matter and the parties. An administration account taken in a suit to which they were not parties would not be binding on them. Having been paid in full, and their claims not having been filed in time, either by themselves or by the administrators, they were not proper parties to an administration suit. It would be necessary, therefore, upon the theory of the argument of the appellants, for the administrator to file separate bills against each obligor, and have separate accounts taken in each case. But one peculiar ground of equity jurisdiction is to prevent a multiplicity of suits, and it is exactly upon this ground that this bill is filed, and its equity is made to rest. As soon as a bill is filed for the purpose of taking the administration account in the chancery court of Marshall county, where the letters of administration

had been granted, the present bill was filed in the same court against all the parties standing in the same attitude, for the ascertainment of their *pro rata* of the assets of the estate, and the amount to be refunded. And the complainant asked that the two causes might be consolidated and heard together, with a view to the saving of costs in the production of testimony and the taking of accounts. The effect of such an order, as this court has repeatedly held, is to leave each case to turn upon its own pleadings and proof, and an appeal in one case will not necessarily bring up the other case: *Ogburn* v. *Dunlap,* 9 Lea, 162, and cases there cited. The effect of our decisions is really to protect the rights of the litigants from injury by reason of an improvident order of consolidation, for the parties may always protect themselves against improper evidence in their case by timely objection. Of course, any proof taken after the consolidation, not thus objected to, would be proof in each cause, unless the record showed the contrary, and any account would be in like manner an account in each. So also, if the record and proceedings in the one case were read as part of the evidence in the other case, they would constitute a part of the record of the latter. In the event of an appeal, the transcript filed by the appellant, without any suggestion of diminution, would be treated as the proper record of the cause. And it would, in such a contingency, be a useless expense and delay to remand the cause for separate proceedings when the parties have had all the benefit of a separate proceeding.

Hatcher *v.* Royster.

The appellants did except to the testimony of certain witnesses whose depositions were taken before the causes were consolidated, and the chancellor sustained the exception. The testimony was taken to show that the administrator, Hatcher, had ʿadministered his intestate's estate with due diligence, and was not· chargeable with neglect or laches. The effect of the testimony. was to limit the assets with which the administrator was chargeable. But the present appellant has not sought ·to increase the debts against the administrator, either by proof or exceptions to the master's reports. And the lapse of time · cannot change the nature and terms of the contracts of the appellants.

The bill in this case is not open to any of the objections raised by the demurrer, no one of which goes to its real equity, the prevention of the multiplicity of suits. The right of action of the administrator on the obligations to refund would not accrue at law until the *pro rata* of the claims of those creditors was first ascertained by an account in equity in a suit to which they were parties. But the rule in equity is that if it takes jurisdiction for one purpose it will exercise it for all purposes. The bill may therefore be filed in advance of the accrual of the legal right of action for the account, and the plaintiff may ask as an incident to that relief for judgment on the bonds for the excess over the *pro rata.* The bill could not properly be filed for these purposes until the assets and debts of the estate were so definitely determined as to make the ascertainment

of the *pro rata* of the claims reasonably certain. That state of affairs may be said to have existed at the filing of this bill, although one of the litigated claims was not finally settled until afterwards, or rather one of the litigations over the supposed assets of the estate. It does not appear that the bill could have been filed at an earlier date with any certainty of an earlier termination than has been attained. It was properly filed in the chancery court of Marshall county, where the administration was granted, and where a suit by creditors was pending which involved the administration account. If the account in that cause had not been brought into this suit by the acts of the parties under the order of consolidation, it would have been necessary to bring it in some other way. And the defendants cannot complain of the fact, whatever they may say of the mode in which it was done, that they were permitted by the course pursued to supervise that account, and see that it was properly taken.

It is contended that interest should only be charged against the defendants from the filing of the bill. But the chancellor charged the administrator with the amounts paid to the defendants, and interest thereon from the date of payment, in favor of the creditors who had filed their claims in time against the estate. And the obligation of the defendants is not only to refund, but to hold the administrator harmless against loss by reason of the payments. The *pro rata* of the creditors who filed their claims was increased by reason of the fact that the administrator had not filed

in time the claims of the defendants which he had paid in full. The obligation of the defendants is not to pay the excess over the *pro rata* thus found, but the excess over the *pro rata* of their respective claims. To ascertain their liability, therefore, it was necessary to add their claims to the claims of the other creditors, and thus ascertain the *pro rata* of the latter claims. This was what was done by the chancellor, and was undoubtedly correct. But, it is said by the appellants, when the administrator paid the defendants' claims in full, he became a creditor of the estate to the amount of the payments, and if he failed to file the claims in time against the estate the loss should fall upon him. And so it does, for he is charged with the whole of the payments, and does not obtain a credit for the *pro rata* to which he would have been entitled if he had filed the claims. But his negligence does not prejudice the defendants, who are only required by the decree to refund the excess of the payments to them over the *pro rata* of their claims treated as actually filed. This is their contract, neither more nor less.

The counsel of the appellants rely upon exceptions taken by them to the master's report of the valid claims against the estate, but they labor under the disadvantage of having the findings of the clerk and master, the chancellor, and the Referees upon these exceptions, against them. There is no such preponderance of evidence against these findings as to justify a reversal. In fact, the preponderance of proof is clearly with the findings. All of the claims allowed

were either filed in the county court, after the suggestion of insolvency, or sued upon within the two years and six months time allowed by law. No objection was taken in the county court to the claims there filed, either by the administrator, the distributees, or other creditors: Code, sec. 2334. And the suits, after protracted litigation, were closed by judgments against the administrator, which judgments were properly allowed: *Bibb* v. *Tarkington*, 2 Lea, 21. Notes payable in current money were also properly allowed at the nominal amount in dollars called for, in the absence of proof showing that the currency was depreciated: *Coffin* v. *Hill*, 1 Heis., 385; *Miller* v. *McKinney*, 5 Lea, 96. The exception to the Jackson claim is not sustained by the record, and the exception to the Wood claim does not go to its validity, which is the only point in which the appellants have any interest as to the claim.

The exceptions to the Referees' report will be overruled, and the chancellor's decree as to the appellants affirmed, with the costs of this court.